IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 1521 |
| | ) | |
| | ) | Judge Anderson |
| PRIME INVESTMENT MORTGAGE | ) | presiding |
| CORPORATION, OPTION ONE | ) | |
| MORTGAGE CORPORATION and | ) | |
| DOES 1-5, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSES
TO SECOND AMENDED COMPLAINT**

Defendant Prime Investment Mortgage Corporation, by its attorney, John J. Lydon, in

response to the Plaintiff's Second Amended Complaint, states the following:

(Introduction)

1.      Plaintiff brings this action against a "subprime" mortgage lender and its assignee

to secure redress for predatory lending practices in violation of the Illinois Consumer Fraud Act

("ICFA"), 815 ILCS Sect. 505/2, the Fair Housing Act ("FHA"), the Equal Credit Opportunity

Act ("ECOA"), the Truth in Lending Act ("T1LA") and TILA's implementing regulations.

ANSWER:      Defendant denies the allegations in paragraph 1.

(Jurisdiction and Venue)

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general

federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction), 42 U.S.C. §3613

and §3717 (FHA), 15 U.S.C. §1691e (ECOA), and 15 U.S.C. §1640 (TILA).

ANSWER:    Defendant admits the allegations in paragraph 2.

3.    Defendants transact business in the District and are deemed to reside here.

ANSWER:    Defendant admits the allegations in paragraph 3.

(Parties)

4.    Mark Smith and Patricia Jones, husband and wife, own and reside in a home at 6357 S. Campbell, Chicago, Illinois 60629.  They have two children.  Ms. Jones runs a small child care center.  She and her husband have a high school education.  They are ordinary consumers.  They are African-American.

ANSWER:    Defendant admits the allegations in the first and fourth sentences of paragraph 3 and lacks knowledge or information sufficient to form a belief regarding the allegations in the second and third sentences of paragraph 3.

5.    Defendant Prime Investment Mortgage Corporation ("Prime Investment") is an Illinois corporation with its principal offices at 2240 West Armitage Avenue, Chicago, IL, 60647.  It does business throughout the Chicago area.  It is engaged in the business of, inter alia, originating sub-prime mortgage loans.

ANSWER:    Defendant admits the allegations in paragraph 5.

6.    Prime Investment originated more than 26 mortgage loans during 2005.

ANSWER:    Defendant admits that the allegations in paragraph 6.

7.    Defendant Option One Mortgage Corporation ("Option One") is a California Corporation, which does business in Illinois.  Its registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite #814, Chicago, IL 60604.  Option One is engaged in the business of purchasing and servicing sub-prime mortgage loans.  It presently services plaintiff's

loan.

>ANSWER:     Defendant admits the allegations in paragraph 7.

8.     Defendant Wells Fargo Bank, N.A., ("Wells Fargo"), as trustee, is a federally-chartered corporation that is engaged in the business of purchasing and holding legal title to sub-prime, residential mortgage loans.  It has principal offices at 7495 New Horizon Way, Fredrick MD, 21703 or at 9062 Old Annapolis Road, MAC-N2702-011, Columbia, Maryland, 21045-1951.  It does business in Illinois.  On information and belief, Well Fargo currently owns plaintiff's loan.  The loan is securitized in a trust, the full name of which is Wells Fargo Bank, N.A., as trustee for the benefit of the certificate holders of asset-backed securities corporation home equity loan trust, series OOMC 2005-HE6.

>ANSWER:     Defendant lacks knowledge or information sufficient to form a
>             belief about the truth of the allegations in paragraph 8.

(Facts Common to All Counts)

9.     If Wells Fargo does not own plaintiff's loan, the current actual owner(s) is/are named as Does 1-5.  Ownership of such loans is not a matter of public record.  Request for the identity of the owner has been made to Option One.

>ANSWER:     Defendant lacks knowledge or information sufficient to form a
>             belief about the truth of the allegations in paragraph 9.

10.     On or about April 14, 2005, Laura Dantuma of Prime Investment solicited Ms. Jones to refinance her mortgage.  She phoned plaintiff at home and offered "help" in the form of "cash out" to pay past due real estate taxes and outstanding consumer debts.

>ANSWER:     Defendant admits the allegations in paragraph 10.

3

11.    In that phone call, Ms. Dantuma took application information from plaintiff over the phone and typed it into a computer to generate a completed loan application.  At all times, Ms. Dantuma and Prime Investment knew plaintiff was African-American.

ANSWER:    Defendant admits the allegations in paragraph 11.

12.    Prime Investment rushed plaintiff through the process.  Ms. Dantuma had Ms. Jones meet her at her office on a Sunday, when no one else was there, in order to sign the initial loan application and to provide proof of income.

ANSWER:    Defendant denies the allegations in the first sentence of paragraph 12 and admits the remaining allegations.

13.    Prime Investment did not provide plaintiff with any preliminary disclosures whatsoever, in violation of TILA, the Real Estate Settlement Procedures Act ("RESPA") and other federal law.

ANSWER:    Defendant denies the allegations in paragraph 13.

14.    The loan was closed just two weeks later, on or about April 28, 2005.  All of the documents Prime Investment provided to plaintiff bear this date.

ANSWER:    Defendant admits the allegations in paragraph 14.

15.    The following are documents relating to the final loan:  a mortgage (Exhibit A), a note (Exhibit B), a HUD-1 Settlement Statement (Exhibit C), a Truth In Lending Disclosure Statement (Exhibit D) and two federal Notice of Right To Cancel forms (Exhibit E).

ANSWER:    Defendant admits the allegations in paragraph 15.

16.    Prime Investment provided plaintiffs with two, Notice of Right to Cancel forms (Exhibit E), instead of the four required (i.e., two per mortgagor).

4

ANSWER:     Defendant denies the allegations in paragraph 16.

17.     Plaintiff and her husband held the property together, and Prime Investment had both sign the mortgage (Exhibit A).

ANSWER:     Defendant admits the allegations in paragraph 17.

18.     Prime Investment gave plaintiff a "2/28" adjustable interest rate loan with exorbitant closing fees, as detailed below.

ANSWER:     Defendant denies the allegations in paragraph 18.

19.     The 1-4 Family Rider to the Mortgage (Exhibit A) shows that Prime Investment took a security interest in not only the real estate and fixtures but in all of plaintiffs personal property inside the home.  This interest was not disclosed on the TILA Disclosure Statement, as required by TILA.

ANSWER:     Defendant denies the allegations in paragraph 19.

20.     Ms. Jones and her husband used the loan for personal, family or household purposes, namely, refinancing of prior debts incurred for such purposes.

ANSWER:     Defendant admits the allegations in paragraph 20.

21.     Immediately following closing, servicing of plaintiff's loan was transferred to Option One (Exhibit F).  As servicer, Option One claims certain rights in plaintiff's loan, including the right to receive payments, report to credit bureaus and to pursue foreclosure as a means of enforcing payment.  It is, therefore, named as a necessary party.

ANSWER:     Defendant denies the allegations in paragraph 21.

22.     On information and belief, ownership of the loan was also assigned to defendant Wells Fargo Bank, N.A., as Trustee.  In the event Wells Fargo does not currently own plaintiff's

loan, the actual owner(s) is/are named as Does 1-5.

> ANSWER:    Defendant lacks knowledge or information sufficient to form a
> belief about the truth of the allegations in paragraph 22.

23.    Plaintiff was current on her mortgage until her adjustable interest rate began re-

setting in May, 2007.  Her income has not changed since she initially applied for the loan.

> ANSWER:    Defendant lacks knowledge or information sufficient to form a
> belief about the truth of the allegations in paragraph 23.

24.    On or about September 24, 2007, when Ms. Jones phoned Option One to explain

that she was having difficulty affording the payments, the customer service representative told

her she could be considered for a loan modification.  She faxed the requested bank statements

and hardship letter the same day.  She was told a decision would be made within 45 days.

> ANSWER:    Defendant lacks knowledge or information sufficient to form a
> belief about the truth of the allegations in paragraph 24.

25.    Six months later and after many phone calls from plaintiff, Option One still has

not notified her of any decision on a loan modification.

> ANSWER:    Defendant lacks knowledge or information sufficient to form a
> belief about the truth of the allegations in paragraph 25.

26.    In the meantime, plaintiff has fallen several months behind on payments and lives

in fear that Option One will initiate foreclosure.  Although Option One has repeatedly instructed

plaintiff not to make payments until a decision on the loan modification has been made, it has

nevertheless imposed late fees in excess of $1,710.54 (Exhibit G).

> ANSWER:    Defendant lacks knowledge or information sufficient to form a
> belief about the truth of the allegations in paragraph 26.

27.    After Dantuma took plaintiff's application, Prime Investment arranged for Grace Appraisal Services ("Grace") to perform an appraisal of plaintiff's property.

ANSWER:    Defendant admits the allegations in paragraph 27.

28.    On information and belief, at the time Dantuma and or Prime Investment did a high volume of business with Grace.

ANSWER:    Defendant denies the allegations in paragraph 28.

29.    Grace was Dantuma's and/Prime Investment's agent(s) for purposes of performing an appraisal of plaintiff's home and property.

ANSWER:    Defendant denies the allegations in paragraph 29.

30.    On information and belief, Dantuma and/or Prime Investment conspired with Grace to arrange for a fraudulently inflated appraisal of the market value of plaintiff's property.

ANSWER:    Defendant denies the allegations in paragraph 30.

31.    On information and belief, on or about April 14, 2005, Dantuma contacted and advised Grace of the value she needed in order to support the principal amount of the loan she wished to make to plaintiff.  The two agreed upon a minimum value or value range for the property.

ANSWER:    Defendant denies the allegations in paragraph 31.

32.    Grace obliged because it wanted to continue to receive the stream of business from Dantuma and Prime Investment.  On information and belief, Grace did a high volume of its business with Prime Investment.

ANSWER:    Defendant denies the allegations in paragraph 32.

33.     On or before April 28, 2005, Grace appraised the home and property for, on information and belief, $265,000 (Exhibit H, which is the incomplete copy of plaintiff's loan application Prime Investment provided to her at closing). Plaintiff did not receive a copy of the appraisal.

ANSWER:     Defendant admits the allegations in paragraph 33.

34.     The $265,000 was substantially and artificially inflated.

ANSWER:     Defendant denies the allegations in paragraph 34.

35.     Five years earlier, in June, 2000, the home appraised for $158,000.

ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.

36.     A March 4, 2008 check on Zillow.com indicates that the property is currently worth approximately $202,500.

ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.

37.     Plaintiff resides in a neighborhood, Gage Park on the southwest side, in which home values did not rise or fall as dramatically as in other neighborhoods in Chicago.

ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.

38.     After Grace performed the appraisal, it communicated the inflated value to Dantuma and Prime Investment, which inserted the same onto the final loan application that they then had plaintiff sign at closing on April 28, 2005 (Exhibit H).

ANSWER:     Defendant denies the allegations in paragraph 38.

39.    Both before and after closing, Prime Investment knew that it was making a loan to plaintiff that was based on an artificially and fraudulently inflated appraised value.

ANSWER:    Defendant denies the allegations in paragraph 39.

40.    Dantuma and Prime Investment did this in order to earn greater amounts of percentage-based, broker fees and in order to generate greater interest income from the loan.

ANSWER:    Defendant denies the allegations in paragraph 40.

41.    As a result of its actions, plaintiff has zero or negative equity in her home, a fact which prevents her from refinancing out of Prime Investment's adjustable rate loan.

ANSWER:    Defendant denies the allegations in paragraph 41.

42.    Further, due to the adjustable rate, which continues to rise, plaintiff has become unable to make payments, the amount of which are increasingly out of her reach.  Prime Investment's actions trapped her in a loan that has put her family's home at risk of foreclosure.

ANSWER:    Defendant denies the allegations in paragraph 42.

43.    Exhibit C shows that, in addition to a $3,468.00 "origination fee" (line 801), Prime Investment Mortgage charged plaintiff an $850 "application fee" (line 809), an $800 "underwriting fee" (line 811), and a $200 "'processing fee" (line 808).  The appraisal fee to Grace was $600 (line 803).

ANSWER:    Defendant admits the allegations in paragraph 43.

44.    On information and belief, Prime Investment, on average, gives higher interest rates to minority borrowers than to Caucasians, regardless of qualifications, as well as charges a higher closing fees (as a percentage of loan principal) in minorities' transactions than it does in whites.  Plaintiff was overcharged in this manner.

ANSWER:    Defendant denies the allegations in paragraph 44.

45.    Prime Investment's pricing practices disproportionately impact minority borrowers such as plaintiff. Plaintiff and other minorities are, on average, subject to higher interest rates and closing fees simply because of their race.

ANSWER:    Defendant denies the allegations in paragraph 45.

46.    This result is known and intended by Prime Investment.

ANSWER:    Defendant denies the allegations in paragraph 46.

47.    The result is very lucrative for Prime Investment. Loans with higher interest rates, and with higher closing fees that are financed, earn Prime Investment more profits, whether it holds the loans in portfolio or sells them to investors on the secondary market.

ANSWER:    Defendant denies the allegations in paragraph 47.

48.    On information and belief, Prime Investment's loan pricing policies delegate significant authority and discretion over interest-rate and closing fee pricing to individual loan officers such as Dantuma. This system gives and is intended to give such loan officers incentive to engage in the subjective mark-up of credit applicants' interest rates and closing fees, without regard to qualification or actual risk. Prime Investment permits any otherwise neutral underwriting criteria to be overridden in this manner. One of the subjective criteria that enter into the loan officers' equation is race.

ANSWER:    Defendant denies the allegations in paragraph 48.

49.    Prime Investment is well aware that its pricing policies influence its loan officer's sales behavior, including Dantuma's in plaintiff's transaction. This is the policy's intended effect.

ANSWER:    Defendant denies the allegations in paragraph 49.

50.     On information and belief, Dantuma and other loan officers are compensated in significant part on the basis of the interest rate and/or fees associated with the loans they originate or broker, which provides them with the incentive to increase minority borrowers' interest rates and closing costs.

ANSWER:     Defendant denies the allegations in paragraph 50.

51.     Prime Investment's brokers are, on average, more effective in persuading its African-American and Latino credit applicants to accept higher interest rates and closing fees than its white customers.

ANSWER:     Defendant denies the allegations in paragraph 51.

52.     In recent years, interest rate and closing fee disparities by race have been subjects of numerous credible studies and discussion, including in trade journals and other industry publications.  Defendants were on notice of the findings of these studies and related concerns but continued their lucrative practices anyway.

ANSWER:     Defendant denies the allegations in paragraph 52.

53.     Prime Investment discriminates in another manner.  It also intentionally and disproportionately targets minorities for solicitation for high-cost subprime loans.

ANSWER:     Defendant denies the allegations in paragraph 53.

54.     Prime Investment disproportionately targets minority borrowers in its telemarketing and other product marketing activities in the Chicago area.

ANSWER:     Defendant denies the allegations in paragraph 54.

55.     There is no legitimate business reason justifying the discriminatory effect of plaintiff's and other minorities' assignment by defendant, regardless of qualification, of higher

interest rates and closing fees, on average, than white borrowers.

ANSWER:    Defendant denies the allegations in paragraph 55.

56.    Alternative policies and practices exist that would not have the same disparate impact on minority borrowers.

ANSWER:    Defendant denies the allegations in paragraph 56.

57.    As a result of Prime Investment's conduct, plaintiff was induced to sign loan documents providing for a loan that was unnecessarily expensive and that was made on less favorable terms than loans defendants made to similarly-situated Caucasians.

ANSWER:    Defendant denies the allegations in paragraph 57.

58.    Plaintiff will prove her claims of discrimination, in part, through a statistical analysis of defendant's loan transactions, based on quantitative data obtained from defendant's loan files.

ANSWER:    Defendant denies the allegations in paragraph 58.

59.    This action was filed March 13, 2008.  Option One was served March 18, 2008. Its counsel was retained prior to April 3, 2008.

ANSWER:    Defendant admits the allegations in the first sentence of paragraph 59 but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

60.    After suit was filed, Ms. Jones continued to phone Option One once or more each week to ask if a decision had been made regarding her application for a loan modification.

ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.

61.     More than once, she had been told that her application was tentatively approved but was nevertheless asked to call back.  On one occasion, since so much time had passed, Option One requested, and she provided, an additional three months' worth of bank statements.

ANSWER:     Defendant denies the allegations in paragraph 61.

62.     On other occasions, Ms. Jones was told that because her application for a loan modification was so likely to be approved, she should not send any further payments.

ANSWER:     Defendant lacks knowledge or information sufficient to form a
            belief about the truth of the allegations in paragraph 62.

63.     She was also told that, as long as she was being considered for a loan modification and because such was likely, Option One would not initiate a foreclosure action.

ANSWER:     Defendant lacks knowledge or information sufficient to form a
            belief about the truth of the allegations in paragraph 63.

64.     However, on April 4, 2008, when Ms. Jones called Option One, it informed her that her application for a loan modification had been denied.  Option One would not give her a reason.  Instead, she was told she would receive a letter through the mail that would explain the reasons for the denial.  To this day, she has received no letter and no explanation.

ANSWER:     Defendant lacks knowledge or information sufficient to form a
            belief about the truth of the allegations in paragraph 64.


**COUNT I**
**(Truth-in-Lending Act–Individual Claim)**

65.     Plaintiff incorporates paragraphs 1-64.  This count is against Prime Investment and the current owner of the loan.  Option One, as servicer, is named as a necessary party only.

ANSWER:     Defendant incorporates its answers to paragraphs 1-64 above as its
            answers to the allegations in paragraph 65 and denies that Option

One is a necessary party.

66.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23.  Sect. 226.23 provides:

(a) <u>Consumer's right to rescind.</u>

> (1)    In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.  [fn]47

> (2)    To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

> (3)    The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

> (4)    When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b)    <u>Notice of right to rescind</u>.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

> (1)    The retention or acquisition of a security interest in the consumer's principal dwelling.

(2)    The consumer's right to rescind the transaction.

(3)    How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4)    The effects of rescission, as described in paragraph (d) of this section.

(5)    The date the rescission period expires .  .  ..

(f)    <u>Exempt transactions</u>.  The right to rescind does not apply to the following:

(1)    A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2)    A credit plan in which a state agency is a creditor.

ANSWER:    Defendant admits the allegations in paragraph 66.

67.    In connection with the loan, Prime Investment failed to provide plaintiff with proper notice of her federal right to cancel the transaction.  It provided plaintiff with only one federal Notice of Right to Cancel form - or with a total of two for both mortgagors - in violation of 12 C.F.R. Sect. 226.23(b) above.

ANSWER:    Defendant denies the allegations in paragraph 67.

68.    This complaint serves as legally sufficient notice of plaintiff's intent to exercise her right to rescind the loan.

ANSWER:    Defendant denies the allegations in paragraph 68.

69.    The loan has not been rescinded.

ANSWER:    Defendant admits the allegations in paragraph 69.

70.    Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee," including Wells Fargo.

15

ANSWER:     Defendant denies the allegations in paragraph 70.

71.     In addition, 15 U.S.C. Sect. 1635(g) provides:

Additional relief

In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

ANSWER:     Defendant admits the allegations in paragraph 71.

## COUNT II
## (Illinois Consumer Fraud Act)

71.     Plaintiff incorporates paragraphs 1-64.

ANSWER:     Defendant adopts its answers to paragraph 1-64 above as it answer to the second paragraph 71.

72.     This claim is against Prime Investment.

ANSWER:     Defendant denies the allegations in paragraph 72.

73.     Defendant engaged in unfair practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging in the unfair and/or deceptive conduct that resulted in originating a loan to plaintiff based on an inflated home value.

ANSWER:     Defendant denies the allegations in paragraph 27.

74.     In particular, defendant engaged in unfair and/or deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 by, among other things:

    a.     Arranging for, conspiring or colluding with Grace Appraisal Services to produce a fraudulently inflated appraisal of plaintiff's home and disguising the fact that she was receiving high loan-to-value loan, all for the purpose of inducing plaintiff to take out the loan so that Prime Investment could reap the profits;

    b.     Misrepresenting to plaintiff the actual market value of her home and

16

making a loan to her that it knew was based upon an inflated appraised value;

c.    Knowingly falsifying the value of plaintiff's home plaintiff's on her loan application; and

d.    Having plaintiff sign a loan application containing a false appraised value, thereby putting her at risk of prosecution.

ANSWER:    Defendant denies the allegations in paragraph 74.

75.    Defendant engaged in such conduct in the course of trade and commerce.

ANSWER:    Defendant denies the allegations in paragraph 75.

76.    Defendant engaged in such conduct with the intent that plaintiff rely on its deception.

ANSWER:    Defendant denies the allegations in paragraph 76.

77.    Defendants engaged in such conduct with the intent to injure plaintiff.

ANSWER:    Defendant denies the allegations in paragraph 77.

78.    Plaintiff was damaged as a result.

ANSWER:    Defendant denies the allegations in paragraph 78.

79.    Defendants' conduct caused plaintiff's injuries.

ANSWER:    Defendant denies the allegations in paragraph 79.

**COUNT III**
**(Common Law Fraud in the Inducement)**

80.    Plaintiff incorporates paragraphs 1-64.

ANSWER:    Defendant adopts its answers to paragraphs 1-64 above as its answer to paragraph 80.

81.    This claim is against Prime Investment.

17

ANSWER:      Defendant admits the allegations in paragraph 81.

82.      Defendant arranged for and/or approved the fraudulent appraisal of plaintiff's

property and approved and originated a loan to plaintiff based on the artificially inflated value.

ANSWER:      Defendant denies the allegations in paragraph 82.

83.      Defendant knew that the appraised value was inflated and false or was reckless

with respect to its truth or falsity.

ANSWER:      Defendant denies the allegations in paragraph 83.

84.      Defendant intended for plaintiff to rely on the fraudulent appraised value in order

to induce plaintiff to take out the loan.

ANSWER:      Defendant denies the allegations in paragraph 84.

85.      The value of plaintiff's property was a material term and predicate of the

transaction with defendant.

ANSWER:      Defendant denies the allegations in paragraph 85.

86.      Plaintiff did, in fact, rely on defendants' fraudulent misrepresentation.  Plaintiff's

reliance was justified.

ANSWER:      Defendant denies the allegations in paragraph 86.

87.      Plaintiff was injured thereby.

ANSWER:      Defendant denies the allegations in paragraph 87.


**COUNT IV**
**(Civil Conspiracy to Commit Fraud)**

88.      Plaintiff incorporates paragraphs 1-64.

ANSWER:      Defendant adopts it answers to paragraphs 1-64 as its answers to

paragraph 88.

89.     This claim is against Prime Investment.

ANSWER:     Defendant denies the allegations in paragraph 89.

90.     Defendant combined and conspired with the Grace Appraisal Services to unlawfully arrange for and produce a fraudulent, appraised value for plaintiff's property.

ANSWER:     Defendant denies the allegations in paragraph 90.

91.     Defendant took concerted and overt actions in furtherance of this fraudulent purpose.  Prime Investment and Grace agreed upon a minimum value or range of value in advance of the appraisal being performed, and Prime Investment approved the loan knowing that the probable actual value of the home was well below $265,000.

ANSWER:     Defendant denies the allegations in paragraph 91.

92.     Defendant conspired - out of excessive concern for its fees, commission and profits - to misrepresent, conceal, overlook and suppress the actual market value of plaintiff's property.

ANSWER:     Defendant denies the allegations in paragraph 92.

93.     Plaintiff was damaged as a result.

ANSWER:     Defendant denies the allegations in paragraph 93.


### COUNT IV
### (Fair Housing Act Class Claim)

94.     Plaintiff incorporates paragraphs 1-64.  This claim is against Prime Investment.

ANSWER:     Defendant adopts it answers to paragraph 1-64 above as its answer
            to paragraph 94.

95.    The Fair Housing Act, 42 U.S.C. §3605, provides:

Discrimination in residential real estate-related transactions

(a)    In general. It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

(b)    "Residential real estate-related transaction" defined.  As used in this section, the term "residential real estate-related transaction" means any of the following:

(1)    The making or purchasing of loans or providing other financial assistance–

(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or

(B) secured by residential real estate.

(2) The selling, brokering, or appraising of residential real property.

(c)    Appraisal exemption. Nothing in this title prohibits a person engaged in the business of furnishing appraisals of real property to take into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status.

ANSWER:    Defendant admits the allegations in paragraph 95.

96.    Defendant Prime Investment violated the Fair Housing Act by assigning plaintiff and other minorities higher interest rates, on average, than it assigned Caucasian customers and/or by charging higher broker fees (as a percentage of loan principal), on average, to plaintiff and other minority customers.

ANSWER:    Defendant denies the allegations in paragraph 96.

97.    The Fair Housing Act, 42 U.S.C. §3613, provides:

§3613.  Enforcement by private persons

(a) Civil action.

> (1) (A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach ....

(c)    Relief which may be granted.

> (1) In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

> (2) In a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person ....

ANSWER:    Defendant denies the allegations in paragraph 97.

(Class Allegations)

98.    Plaintiff brings this claim on behalf of a class consisting of(a) all African-American persons with Illinois addresses, (b) who obtained a mortgage loan directly from Prime Investment, (c) paid closing fees to Prime Investment and (d) where the loan was closed on or after a date two years prior to the filing of this action.

ANSWER:    Defendant denies that class treatment is appropriate in this case.

99.    The class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of each class.

21

ANSWER:        Defendant denies the allegations in paragraph 99.

100.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether African-Americans, on average, were assigned higher interest rates and paid a greater percentage of closing fees than Prime Investment's Caucasian customers.

ANSWER:        Defendant denies the allegations in paragraph 100.

101.    Plaintiffs claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

ANSWER:        Defendant denies the allegations in paragraph 101.

102.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in mortgage cases and class actions.

ANSWER:        Defendant denies the allegations in paragraph 102.

103.    A class action is superior to other, alternative methods of adjudicating this dispute.  Individual cases are not economically feasible.  The nature of the claim is such that proof of the class-wide disparate impact of imposing higher interest rates and charging higher closing fees is necessary.

ANSWER:        Defendant denies the allegations in paragraph 103.

## COUNT VI
### (Equal Credit Opportunity Act–Class Claim)

104.    Plaintiffs incorporate paragraphs 1-64.  This claim is against Prime Investment.

ANSWER:        Defendant incorporates its answers to paragraphs 1 - 64 above as its

answer to paragraph 104.

105.    The Equal Credit Opportunity Act, 15 U.S.C. §1691, provides:

(a) Activities constituting discrimination. It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction–

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)...

ANSWER:    Defendant admits the allegations in paragraph 105.

106.    Defendant violated the ECOA in the manner alleged above.

ANSWER:    Defendant denies the allegations in paragraph 106.

107.    The Equal Credit Opportunity Act, 15 U.S.C. § 1691e, further provides:

Civil liability

(a) Individual or class action for actual damages. Any creditor who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class.

(b) Recovery of punitive damages in individual and class action for actual damages; exemptions; maximum amount of punitive damages in individual actions; limitation on total recovery in class actions; factors determining amount of award. Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a), except that in the case of a class action the total recovery under this subsection shall not exceed the lesser of $ 500,000 or 1 per centum of the net worth of the creditor. In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

(c) Action for equitable and declaratory relief.  Upon application by an aggrieved applicant, the appropriate United States district court or any other court of

competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title.

(d) Recovery of costs and attorney fees.  In the case of any successful action under subsection (a), (b), or (c), the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection ....

(f) Jurisdiction of courts; time for maintenance of action; exceptions. Any action under this section may be brought in the appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction. No such action shall be brought later than two years from the date of the occurrence of the violation ....

ANSWER:    Defendant admits the allegations in paragraph 107.

(Class Allegations)

108.    Plaintiff brings this claim on behalf of a class consisting of (a) all African American persons with Illinois addresses, (b) who obtained a mortgage loan directly from Prime Investment, (c) paid closing fees to Prime Investment and (d) where the loan was closed on or after a date two years prior to the filing of this action.

ANSWER:    Defendant denies the allegations in paragraph 108.

109.    The class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of each class.

ANSWER:    Defendant denies the allegations in paragraph 109.

110.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether African-Americans, on average, were assigned higher interest rates and paid a greater percentage in closing fees than Prime Investment's

Caucasian customers.

ANSWER:    Defendant denies the allegations in paragraph 110.

110.[1]    Plaintiffs claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

ANSWER:    Defendant denies the allegations is the second paragraph 110.

111.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit cases.

ANSWER:    Defendant denies the allegations in paragraph 111.

112.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.  The nature of the claim is such that proof of the class-wide impact assigning higher rates and charging higher fees is necessary.

ANSWER:    Defendant denies the allegations in paragraph 112.

## COUNT VII
### (Equal Credit Opportunity Act–Individual Claim)

Defendant Prime Investment Mortgage Corporation does not answer count VII because it is only directed against Defendant Option One.

## AFFIRMATIVE DEFENSES

1.    The Plaintiffs' FHA and ECOA claims fail to state a claim upon which relief can be granted because FHA and ECOA claims cannot be established by a disparate impact on minority borrowers.

---

[1]There are two paragraphs 110 in the Second Amended Complaint.

2.      The Plaintiffs' claims are barred by the voluntarily payment doctrine.

3.      The Plaintiffs have failed to mitigate damages.

WHEREFORE Defendant Prime Investment Mortgage Corporation demands judgment in

its favor and against Plaintiff and that the court award Defendant its costs.


Respectfully submitted,
Prime Investment Mortgage Corporation,


By: ____/s/ John J. Lydon_____
        One of its attorneys.

John J. Lydon, Esq.
Gomberg, Sharfman, Gold & Ostler, P.C.
208 South LaSalle St., Suite 1200
Chicago, Illinois 60604
(312) 332-6194
fax (312) 332-4083

## CERTIFICATE OF SERVICE

I, John J. Lydon, certify that, service of this document was accomplished by means of the Court's "ECF" system on August 15, 2008.


_____/s/ John J. Lydon_____